## FRANKLIN COUNTY *v.* CROW.

1. The provision in the local act of February 21, 1873 (Acts of 1873, p. 253), imposing upon the board of county commissioners of Franklin county the duty "to audit and allow all claims against the county for extra service rendered by any county officer," was not repealed by the general act of 1881, now contained in the Civil Code, § 5402.

2. Since the passage of the act of October 22, 1889 (Acts of 1889, p. 76; Civil Code, § 4269), it has been unlawful for the ordinary of a county to charge any fee for drawing checks, orders, drafts, or warrants on the county treasurer.

3. While every presumption will be indulged in favor of the judgment of a court of general jurisdiction, where the record is silent as to facts necessary to give jurisdiction to the court, still if it appears upon the face of the record that the judgment was rendered in a case or pro-ceeding of which the court had no jurisdiction, the judgment is a nullity.

4. Orders passed by the county commissioners of Franklin county subse-quently to the passage of the act of 1889, which show upon their face that extra compensation was allowed to the ordinary for drawing orders and drafts on the county treasurer, are absolutely void, and can not be pleaded as a defense in a suit by the county against the ordinary to recover back the amount received from the county treasurer as extra compensation for drawing such orders and drafts.

Submitted April 18,—Decided June 13, 1907.

Complaint.    Before Judge Brand.    Franklin superior court. June 8, 1906.

This was an action in the name of Franklin county against Crow, to recover the sum of $1740.50, besides interest. The petition alleged, that Crow was ordinary of the county from January 1, 1897, to January 1, 1905, and that during that time he received from the county treasurer, in fees for money orders and drafts issued by him as ordinary, on the treasurer, in favor of different parties, the sum above named, charging as a fee for each order 50 cents, and for drafts, in some cases, 50 cents, and in other cases 25 cents each. It is alleged that these charges were illegal and without authority of law. The petition then sets forth the dates of the various orders upon which these sums were paid. The claim of the defendant against the county for services rendered in drawing the orders and drafts was never allowed by the grand jury. To this petition the defendant filed an answer, in which he alleged, that under authority of law and in accordance with a long prevailing custom, he received the sums of money from the treasurer of Franklin county as alleged, and that these sums were reasonable and just compensation for the services rendered, and that in each instance the claim made by him for such services was presented to, audited, and allowed by the county commissioners of the county, and ordered paid by them; that he in good faith presented each claim for the services and received the money from the treasurer; and that he is ready now, and more than willing, and amply able to pay to the county every dollar, with interest, that he has illegally received from the treasurer.

At the trial the plaintiff introduced a number of orders drawn by the defendant as ordinary, on the county treasurer, for different sums, each of them including an item of the character indicated in the petition. Each of the orders recited that the amount therein specified had been allowed by the county commissioners. There were also introduced various drafts drawn by the ordinary upon the county treasurer, payable to himself, for the amounts specified in the orders above referred to. The defendant introduced in evidence extracts from the minutes of the county commissioners, showing that the claims which were the foundation of these orders and drafts had been allowed by the county commissioners. The minutes in each instance showed that certain sums,

had been audited and allowed to the ordinary "for extra and actual services rendered the county," for which no fees were prescribed. In each bill of particulars for services rendered, as it appeared upon the minutes, was an item or items for drawing orders on the county treasurer, the amount allowed for such services being in some instances 50 cents for the order or draft, and in other instances 25 cents for the draft. The judge directed a verdict for the defendant, and the plaintiff excepted.

*W. R. Little* and *J. B. Jones,* for plaintiff.

*James H. Skelton,* for defendant.

COBB, P. J. (After stating the facts.)

1. In 1873 an act was passed which provided for the establishment of a board of county commissioners of roads and revenues for the county of Franklin, consisting of three persons; the first incumbents to be appointed by the ordinary, and their successors to be elected by the people. The act declared that the commissioners should be "the legal advisers of the ordinary in all matters relating" to county taxes, public buildings, roads, bridges, and paupers, and "in all county matters generally." The act further declared: "It shall be the duty of said board of commissioners to audit and allow all claims against the county for extra services rendered by any county officer." The board was to hold four regular sessions each year, and such special sessions as the ordinary should deem necessary. The ordinary was required to keep the minutes of the proceedings of the board, and provision was made for allowance of compensation for that purpose. Acts of 1873, p. 253. It is contended that the local act was repealed by the act of September 28, 1881, now contained in §5402 of the Civil Code. The provisions of that section, so far as they appertain to this discussion, are, in substance, that in those counties of the State where the ordinaries are vested with the management of county affairs and no provision is made for compensation for this service, the ordinaries shall state their respective claims to the grand juries of the county at the spring term, who may allow the amount claimed, or so much thereof as they may deem right and proper. There is no reference in this act to the particular local act under consideration, or to local acts of any character. The question, therefore, is whether the provision of the act of 1873, allowing the county commissioners of Franklin county to audit

and allow claims against the county for extra service of county officers, is repealed by the subsequent general law above referred to.

A general law will not be so construed as to repeal an existing particular or special law unless it is plainly manifest, from the terms of the general law, that such was the intention of the law-making body. Repeals by implication are not favored, and a general later affirmative law does not abrogate an earlier special law by mere implication. "Having already given its attention to the particular subject, and provided for it, the legislature is reasonably presumed not to intend to alter that special provision by a subsequent general enactment, unless that intention is manifested in explicit language, or there be something which shows that the attention of the legislature had been turned to the special act, and that the general one was intended to embrace the special cases within the previous one; or something in the nature of the general one making it unlikely that an exception was intended as regards the special act. The general statute is read as silently excluding from its operation the cases which have been provided for by the special one." "The fact that the general act contains a clause repealing acts inconsistent with it does not diminish the force of this rule of construction." See *Montford* v. *Allen,* 111 *Ga.* 21, and authorities cited; 11 Michie's Digest *Ga. Rep.* 861. The local act of 1873 was valid at the date of its passage, there being, in the constitution of 1868, no inhibition against the passage of local laws of this character. When the rule of construction above referred to is applied to that portion of the act allowing the county commissioners to audit and allow claims against the county for extra service by the county officers, it is manifest that no repeal of this provision was effected by the subsequent general law.

2. By an act approved March 17, 1866, the following item was added to the fee bill of ordinaries: "For every order passed where no fees are prescribed, 50." Acts of 1865-6, p. 40; Code of 1882, §3694. In 1889 the item above referred to in the fee bill of the ordinaries was amended so as to read as follows: "For every order passed where no fees are prescribed, provided that no fees shall be charged for drawing checks, orders, drafts, or warrants on the county treasurer, fifty cents." Acts of 1889, p. 76; Civil Code, §4269. In *Lumpkin County* v. *Williams,* 89 *Ga.* 388, it was held that the fee prescribed for the drawing of orders above referred to

was for judicial orders, and that the words never did embrace orders drawn by the ordinary on the county treasurer for the payment of money. In that case it was held that the county, in its corporate name, could maintain suit against the ordinary to recover back the amount paid to him by the county treasurer on orders drawn by himself embracing services for drawing orders for money on the treasurer at fifty cents per order; and that this was true as to orders drawn prior to, as well as after, the passage of the act of 1889. Prior to the act of 1889 it might have been within the authority of the county commissioners of Franklin county to audit and allow a claim for extra services, growing out of the drawing of orders for money on the county treasurer by the ordinary, but since the passage of that act the county commissioners had no authority to allow any amount for such services. The effect of the act of 1889 is to declare that for this service the ordinary shall not be compensated. It is to be presumed that the General Assembly considered that the fees and compensation derived by the ordinary for other services would be sufficient compensation for that officer, without allowing any compensation whatever for the ministerial duty imposed upon him in the drawing of orders and drafts on the county treasurer. But, without reference to what might have been the motive of the General Assembly, the language of the act is clear and unequivocal, and the ordinary must perform this service without any compensation, either regular or extra. Such is the law. It therefore appears upon the face of the order of the county commissioners that they have allowed to the ordinary compensation which is not only not authorized by law, but which is in terms prohibited by the law.

3. It has been held, that an order drawn by the ordinary of a county on the county treasurer for the payment of a debt due by the county is evidence of an adjudication by the ordinary that the amount stated in the order is due; and that while the treasurer can attack the judgment for fraud or mistake, he can not set up want of power in the county authorities to pay the amount specified in the order. *Neal Loan & Bkg. Co.* v. *Chastain,* 121 *Ga.* 500; *Shannon* v. *Reynolds,* 78 *Ga.* 760; *Coleman* v. *Neal,* 8 *Ga.* 560. It can not be claimed that the effect of these decisions is to give to the order of the ordinary more than the sanctity attributed by the law to the judgment of a court of general jurisdiction, even if

such rulings go to the extent of raising the adjudication by the ordinary to such high dignity. When a judgment has been rendered by a court of general jurisdiction and the record is silent as to any fact necessary to give the court jurisdiction, the law presumes that such fact existed; and generally this is a conclusive presumption. *Sheppard* v. *Whitfield,* 50 *Ga.* 311. If the judgment of a court of general jurisdiction appears, upon its face, to have been rendered in a case or proceeding of which the court had no jurisdiction whatever, the judgment is absolutely void, and may be so treated whenever and wherever any right is sought to be set up thereunder. *Head* v. *Bridges,* 67 *Ga.* 227 (1); *Parish* v. *Parish,* 32 *Ga.* 653. In the expressive language of Judge Warner, such judgments "carry their death wound on their face." A judgment which shows upon its face that it is founded upon a cause of action which is not authorized by law is a nullity. For the stronger reason would a judgment showing upon its face that it was founded upon a cause of action prohibited by law be utterly void. In *Bell* v. *Hanks,* 55 *Ga.* 274, the plaintiff recovered a judgment against the defendant in 1861. In 1869 the defendant moved to set aside the judgment upon the ground that it had been rendered for the hire of a slave; and the court so ordered. In 1874 the plaintiff moved to set aside the vacating order, upon the ground that it was beyond the jurisdiction of the court to pass such an order, it being founded upon a ground unknown to the law. The court sustained this motion, and the Supreme Court affirmed the judgment. This decision was by a unanimous bench, and followed the reasoning in the case of *Prescott* v. *Bennett,* 50 *Ga.* 266, and in the dissenting opinion of Judge Warner in *Tison* v. *McAfee,* 50 *Ga.* 284, and *Fannin* v. *Durdin,* 54 *Ga.* 476. In *Rawson* v. *Gregory,* 59 *Ga.* 733, it was also held by a unanimous bench that an order setting aside a judgment because based on a slave debt is a mere nullity. It is to be noted that in all these cases the judgments thus declared to be nullities, because of facts appearing on the face of the record, were judgments rendered by courts of general jurisdiction. We can add nothing to the reasoning of Judge Warner as appears in the dissenting opinions, which were afterwards adopted and followed, and in the other opinions rendered by him when he was speaking for the court.

4. When the principles above referred to are applied in the pres-

ent case, it is apparent that the defendant can derive no benefit whatever from the orders of the county commissioners allowing him compensation for drawing orders and drafts on the county treasurer. Upon the face of each order appears the purpose for which it was drawn; and the county commissioners have therefore rendered a judgment in the plaintiff's favor not only upon a cause of action unauthorized, but upon an alleged cause of action of which they are expressly prohibited from entertaining jurisdiction. If the orders had been silent as to the items, it may be that a presumption might have been indulged that the county commissioners had kept within their jurisdiction, and that the extra compensation was allowed for a lawful purpose. But when it appears upon the face of the order that the extra compensation was allowed for a service for which the law says there shall be no compensation allowed, the order can not be otherwise treated than as a nullity, for the reason that it is beyond the jurisdiction of the tribunal passing it. The court erred in directing a verdict for the defendant.            *Judgment reversed. All the Justices concur.*